UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

[Filed Electronically]

| | |
|---|---|
| **STEPHANIE TROUTMAN, Administratrix** ) <br> **of the Estate of CHARLES R. TROUTMAN, Jr.** ) <br> **deceased,** ) <br> ) <br> **PLAINTIFF** ) <br> ) <br> v. ) <br> ) <br> **LOUISVILLE METRO DEPARTMENT** ) <br> **OF CORRECTIONS** ) <br> **Serve: Mayor Gregory Fischer** ) <br> **Metro Hall/4th Floor** ) <br> **527 W. Jefferson St.** ) <br> **Louisville, KY 40202** ) <br> ) <br> -and- ) <br> ) <br> **LOUISVILLE/JEFFERSON COUNTY** ) <br> **METRO GOVERNMENT** ) <br> **Serve: Mayor Gregory Fischer** ) <br> **Metro Hall/4th Floor** ) <br> **527 W. Jefferson Street** ) <br> **Louisville, KY 40202** ) <br> ) <br> -and- ) <br> ) <br> **MARK E. BOLTON, individually, and in his** ) <br> **Official capacity as Director, Louisville Metro** ) <br> **Department of Corrections** ) <br> **400 S. Sixth Street** ) <br> **Louisville, KY 40202** ) <br> ) <br> -and- ) <br> ) <br> **CORRECTION OFFICERS** ) <br> **DUSTIN C. MILLER,** ) <br> **RANDELL T. RAMEY,** ) <br> **CLIFFORD MARBREY,** ) <br> **OFFICER PIERCE,** ) <br> **T. WARDEN, and,** ) <br> **J. MYERS, all individually, and in their** ) | Case No. 3:16-CV-000742-DJH |

| | |
|---|---|
| **Official capacities** | ) |
| **c/o Louisville Metro Department of Corrections** | ) |
| **400 S. Sixth Street** | ) |
| **Louisville, KY 40202** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **CORRECT CARE SOLUTIONS** | ) |
| **Serve:  Corporate Creations Network, Inc.** | ) |
| **       205 Powell Place** | ) |
| **       Brentwood, TN 37027** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **CORRECT CARE SOLUTIONS MEDICAL** | ) |
| **STAFF, to include, but not necessarily limited to** | ) |
| **NURSE TEMPLE,** | ) |
| **NURSE LEAMON,** | ) |
| **NURSE SUMMERFIELD,** | ) |
| **NURSE BROWN,** | ) |
| **all individually, and in their official capacities** | ) |
| **Serve through:** | ) |
| **       Corporate Agent of CORRECT** | ) |
| **       CARE SOLUTIONS,** | ) |
| **       Corporate Creations Network, Inc.** | ) |
| **       205 Powell Place** | ) |
| **       Brentwood, TN 37027** | ) |
| | ) |
| **       -and serve-** | ) |
| **       c/o Louisville Metro Department of** | ) |
| **       Corrections** | ) |
| **       400 S. Sixth Street** | ) |
| **       Louisville, KY 40202** | ) |
| | ) |
| **-and-** | ) |
| | ) |
| **JOHN DOES and JANE DOES,** | ) |
| **Individually, 1-10** | ) |
| **Serve:  via Warning Order Attorney** | ) |
| | ) |

| | |
|---|---|
| DONNA SMITH | ) |
| Serve through: | ) |
|     Corporate Agent of CORRECT | ) |
|     CARE SOLUTIONS, | ) |
|     Corporate Creations Network, Inc. | ) |
|     205 Powell Place | ) |
|     Brentwood, TN 37027 | ) |
| | ) |
|     -with copy to counsel of record | ) |
|     Megan O'Reilly | ) |
|     Blackburn Domene & Burchett PLLC | ) |
|     614 West Main Street, Suite 3000 | ) |
|     Louisville, Kentucky 40202 | ) |
| | ) |
| SGT. ERNEST L. GOFF, individually, and | ) |
| in his official capacities | ) |
| c/o Louisville Metro Department of Corrections | ) |
| 400 S. Sixth Street | ) |
| Louisville, KY 40202 | ) |
| | ) |
|     -with copy to counsel of record | ) |
|     Denis Ogburn, | ) |
|     Assistant County Attorney | ) |
|     531 Court Place, Suite 900 | ) |
|     Louisville, Kentucky 40202 | ) |
| | ) |
| | ) |
| **DEFENDANTS** | ) |

**FIRST AMENDED COMPLAINT**

Comes the Plaintiff, STEPHANIE TROUTMAN, Administratrix of the Estate of CHARLES R. TROUTMAN, Jr., deceased, by counsel, and pursuant to the information and findings of the just recently received Louisville Metro Police Department's ("LMPD") Public Integrity Unity ("PIU") Investigative Report relevant to the suicide death of Mr. Charles R. Troutman, Jr.[1], and, also pursuant to FRCP 15, prvides the following Amendment to the original

---

[1] Notably, the PIU Report was substantively completed by Sgt. Laytham on 4/25/2016.  A proper Open Records Request was made for "all investigative reports, incident reports, autopsy reports . . .", on June 2, 2016.  Despite repeated requests the report was not produced until Decemeber, after suit was filed.  Moreover, to date LMDC has not produced its Internal Investigation

Complaint.  Plaintiff repeats and reasserts the allegations of the original Complaint as if fully set forth herein, and adds the following amendments:

## I. INTRODUCTION

1. Plaintiff STEPHANIE TROUTMAN, as the daughter and Administratrix of the Estate of CHARLES R. TROUTMAN, Jr, deceased (hereafter "Plaintiff"), filed this original action as the result of her father's in-custody death at Louisville Metro Department of Corrections (sometimes hereinafter referred to "Corrections").  Ms. Troutman contends in her original complaint that her father died while being held at Louisville Metro Corrections as a result of the deliberate indifference to his serious and obvious medical needs by Corrections and by their contract medical care provider, Correct Care Solutions ("CCS"), and its employees.  In addition, LMPD's PIU Report shows that Mr. Troutman's death is further the result of Defendants' failure to supervise, monitor, and train correctional and medical staff to properly detect the serious medical conditions of inmates and to provide prompt and immediate medical attention to those such as Mr. Troutman who evidence suicidal ideation, in violation of custom and policy of the Defendants.  Mr. Troutman and his estate suffered as a result of Defendants' conduct, and punitive damages are proper to punish Defendants' conduct and forever deter its repetition.

## II. JURISDICTION AND VENUE

2. Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed her father by the Eighth and Fourteenth Amendments to the Constitution of the United

---

relevant to Mr. Troutman's suicide, even though the PIU Report indicates that the Death Report was completed and was ready for pickup on October 17, 2016 per communications from Lt. Jennifer Eubanks, Louisville Metro Department of Corrections, Professional Standards Unit.

States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§1331 and 1343. Plaintiff also seeks to recover damages under the supplemental jurisdiction of this Court under 28 U.S.C. §§1367, over the state claims of negligence, gross negligence, and wrongful death. These state law claims are so related to the federal claims that one controversy exists for Art. III purposes. Jefferson County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

### III. PARTIES

3. Plaintiff resides in Jefferson County, Kentucky. Plaintiff, Ms. Troutman, was appointed Administratrix of Mr. Troutman's estate by order of the Jefferson District Court on May 24, 2016.

4. Defendant Louisville Metro Department of Corrections, and Defendant Louisville/Jefferson County Metro Government are governmental entities created pursuant to the Ky. Constitution §63 and KRS Chap. 67A and 67B, and said entities are at all times mentioned herein, were responsible for the establishment of policies and procedures, either formally or by custom and practice, for the employment, training, supervision and conduct of, the Director of Corrections, Mark E. Bolton, and the officers and employees at Corrections, and the condition of the premises in which Mr. Troutman was incarcerated and died.

5. Defendant Mark E. Bolton was at all times mentioned herein Director of Louisville Metro Department of Corrections, and as such was also responsible for the establishment of policies and procedures, either formally or by custom and practice; and, was responsible for the employment, training, supervision and conduct of, the officers and other employees at Corrections, and the condition of the premises in which Mr. Troutman was incarcerated and died. In addition, Defendant Bolton through his officers and employees was responsible for monitoring Mr.

Troutman during his incarceration, had knowledge, or witnessed, Mr. Troutman's condition and behavior, the implements at his disposal, and the premises in which he was incarcerated, and responded with deliberate indifference or neglect/gross neglect as described below.

6. Defendant, Correct Care Solutions ("CCS") is a Kansas corporation and privately held medical provider with its principal place of business at 128 Murfreesboro Pike, Suite 500, Nashville, Tennessee, whose corporate focus is to serve patients located in state hospitals, forensic treatment and civil commitment centers. Upon information and belief, on or about the date of Mr. Troutman's death, CCS held a $9 million contract with the Louisville Metro Department of Corrections to provide proper medical care to Corrections' inmates. CCS was authorized to do business in the Commonwealth of Kentucky at all relevant times herein.

7. Defendants Dustin C. Miller, Randell T. Ramey, Clifford Marbrey, Officer Pierce, T. Warden, J. Myers, and **SGT. ERNEST L. GOFF,** and other unknown officers and employees, were at all times mentioned herein officers and/or employees or sub-contractors of Corrections, and were responsible for monitoring Mr. Troutman during his incarceration, and knew of, or witnessed Mr. Troutman's condition and behavior, the implements at his disposal, and the premises in which he was incarcerated, and responded with deliberate indifference or neglect/gross neglect as described below.

8. During the relevant time, herein, Defendants CCS Medical Staff, to include but not necessarily limited to Nurses Temple, Leamon, Summerfield, Brown, and **DONNA SMITH** were employees of CCS specifically tasked with providing medical care that otherwise was the responsibility of Louisville Metro Department of Corrections.

9. Upon information and belief, Defendants CCS also employed **DONNA SMITH** as part of its medical staff. Defendant Smith was also tasked with providing medical care that otherwise was the responsibility of Louisville Metro Department of Corrections, and said medical care was below the standard of care and was deliberately indifferent to Mr. Troutman's medical needs.

10. Defendants, CCS and its individually named medical staff jointly and severally had a duty to citizens of the Commonwealth of Kentucky who are incarcerated at Louisville Metro Department of Corrections to provide reasonable and safe medical care generally and supervision for those with suicidal ideation.

11. Defendant CCS had a duty to employ properly trained and medical staff who could oversee, secure and keep safe those individuals with suicidal ideation.

## IV. NATURE OF DEFENDANTS' CONDUCT

12. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Louisville/Jefferson County. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the Defendants Louisville Metro Corrections and its Director, Mark E. Bolton, Louisville/Jefferson Metro Government, CCS and all employees known and unknown employees of said Defendants, failed to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures, either formally or by custom and practice, and/or to properly and reasonably provide adequate detention and incarceration procedures to protect the constitutional

rights of inmates like Mr. Troutman, and/or to design, construct or modify the premises of the Jail to properly house and safeguard individuals with Mr. Troutman's condition.  Defendants' conduct was intentional and grossly negligent, indicated active malice toward Mr. Troutman and constituted a total deliberate and reckless disregard for, and indifference to, his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages his estate is entitled to recover.

## V. FACTS

13. Mr. Troutman was arrested on November 12, 2015 for drug related offenses and taken to Metro Department of Corrections.  Shortly after midnight on November 13, 2015, Mr. Troutman was booked into Corrections.  Upon his booking, Mr. Troutman was placed in a holding cell by himself due to an altercation.

14. Later on November 13, 2015, during a security check, Mr. Troutman was found lying on the ground in Holding Cell 2 shaking and spitting.  Upon further investigation, Officer Vanover found gauze wrapped so tightly around Mr. Troutman's neck that he (Vanover) could not insert a finger; but Vanover found one end of the gauze strip and began to unravel the gauze to remove it from Troutman's neck and Mr. Troutman began to recover.

15. Sgt. Schmitt responded to a back-up call and was able to talk to Mr. Troutman at that time.  In this discussion, Mr. Troutman explicitly expressed his desire to commit suicide, stating that he was "a junkie and had no reason to live because [he] was going to get 20 years for his charges."

16. Per Corrections' internal records, "[b]ecause of this inmate's mental health [as observed by Nurses] Stith [perhaps "Smith"] and Denning, [he was] moved to "OBS 1."

17. The Behavioral Health and Psychiatric Provider Initial Evaluation (hereinafter

"Behavioral Evaluation"), by Defendant CCS employee(s) on November 13, 2015, showed that Mr. Troutman was suffering from "Suicide and Self-Inflicted Injury Not Otherwise Specified and Drug Withdrawal," but inconsistent with these findings, Mr. Troutman denied that his actions were a suicide attempt. The Behavioral Evaluation went on to show "Relevant Past Medical History" of a traumatic head injury and "**Prior Self Harm Attempt**" along with his history of substance abuse. Yet, on November 16, 2016, CCS employee(s) authorized discharge from "level 1, release to gp [general population]" with no follow-up required, despite finding in his behavior assessment on that day that he exhibited only "fair" judgment. (Behavioral Evaluation, Exh. 1).

18. Upon information and belief, CCS Medical Staff, specifically Nurse Temple, cleared Mr. Troutman to return to the general population "from Detox" (no mention of suicide watch) on November 17, 2015. These records do not reflect that any specific warnings were provided regarding Mr. Troutman's suicide risk although suicides in local jails are the leading cause of death for U.S. inmates, according to a recent report by the Bureau of Justice Statistics. (*See* www.themarshallproject.org/documents/2191181-mortality-in-local-jails-and-state-prisons).

19. Mr. Troutman's daughter, Plaintiff and Administratrix herein, called Corrections on more than one occasion and reported to them what she perceived to be her father's very fragile and depressed state. Only seven (7) days after his discharge to the general population on November 24, 2016, Mr. Troutman was involved in another altercation, written up and secured in a holding cell which, despite his earlier attempt at suicide, contained implements to effect a suicide, to include a bed sheet, a bunk, and barred windows around which the bed sheet could be secured. Defendant CCS Nurse Brown was notified of Mr. Troutman's placement in the single cell; however, upon information and belief, said Defendants did nothing.

20. The opinion of the investigating officer from the Public Integrity Unit of Louisville

Metro Police showed concerns as follows:

> What is unclear and disturbing is why Mr. Troutman was housed within a single cell room with exposed bars and afforded the means in order to do so within such a close proximity of an unsuccessful suicide attempt, a mere 11 days prior. Furthermore, these single cells with exposed bars have been the site of multiple in custody deaths via ligature hanging in the past yet the exposed bars remain.

21. Apparently, none of the Defendants, neither Corrections, nor the CCS medical staff, monitored Mr. Troutman's subsequent activities in this holding cell, thus allowing him sufficient time to remove his bed sheet and affix it in such a way that he could hang himself, even though it was clear that Mr. Troutman was agitated after another court appearance, and that in the presence of Defendant Corrections Officer Ramey, Mr. Troutman was punching and kicking the doors. Nonetheless, C.O. Ramey left Mr. Troutman alone and, according to the investigation by PIU, he hanged himself only a short time later.

22. Defendants violated numerous common jail standards of practice in general, and/or Kentucky regulations and written policies of the Jail in particular, intended to protect someone in Mr. Troutman's condition, including but not limited to those requiring that inmates in Mr. Troutman's condition and in isolation be regularly monitored.

### VI.    CAUSES OF ACTION

**A.    Count I – Violation of Civil Rights and Cruel and Unusual Punishment**

23. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

24. All Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of, and indifference to, Mr. Troutman's life as well as his rights and the risk of harm to him occasioned by such conduct. All Defendants were aware of numerous facts from which the necessary inference of a substantial

risk of serious harm to Troutman could be drawn, and they knew of his prior suicide attempt. As a result of same, they had a duty to monitor Troutman for signs of suicide; they had a duty not to place him in a cell that was equipped with the implements of suicide. Irrespective of this knowledge, Troutman was nevertheless "placed in a single cell with exposed bars which had been the site of multiple in custody deaths via ligature hanging in the past…" even though he was exhibiting signs of agitation consistent with his prior attempt at suicide. All Defendants consciously disregarded these risks of serious self-harm, allowing Mr. Troutman's death by hanging.

25. Plaintiff believes and, after reasonable discovery, will show that Mr. Troutman's treatment by all Defendants was the result of customs and practices of Defendants that were contrary to, or expressly violated, common standards of practice in jails, Kentucky regulations, and written policies of Corrections, and that such customs and practices were the "moving force" behind Mr. Troutman's death. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at Corrections, including Mr. Troutman, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

26. As a result of the foregoing, Mr. Troutman, through all Defendants' deliberate indifference and gross negligence -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment, deprived of his life, and denied due process of law in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

27. As a result of the afore-described conduct, all Defendants, individually and/or

jointly and severally, are proximately liable to Plaintiff for damages, both compensatory and punitive, for the injuries and death of her father, Mr. Troutman.

### B.     Count II – Gross Negligence

28.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

29.     By virtue of the foregoing, Defendants were negligent and grossly negligent and such negligence and gross negligence was the proximate cause of Mr. Troutman's injuries and death.

### C.     Count III – Kentucky Wrongful Death

30.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

31.     Mr. Troutman suffered a personal injury under KRS 411.133 and/or a wrongful death under KRS 411.130(1), for which his estate is entitled to recover damages pursuant to KRS 411.133 and/or 411.130(2).

### D.     Count IV -- Municipal Liability

32.     Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

33.     All Defendants herein failed to take reasonable measures to prevent suicides in the in the jail, when they knew, or should have known, of the risk of suicides.

34.     The Defendants, individually or jointly and severally, failed to implement and enforce appropriate policies and procedures, and/or failed to properly screen for suicides, and/or failed to train, and supervise employees to prevent jail suicides in violation of the United States Constitution and the Kentucky Civil Rights Act for which said Defendants, individually and/or

jointly and severally, are proximately liable to Plaintiff for the injuries and compensatory and putative damages in an amount to be determined by a jury.

35. These inadequacies by the Municipal Defendants was the direct and proximate result of the municipality's deliberate indifference to the rights of Mr. Troutman and those inadequacies were closely related to and/or actually caused his death.

### E. Count V -- Negligence of CCS

36. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

37. Defendant CCS and its individual Defendant employees had a legal duty to conform its conduct with the law, statutes and regulations as a reasonable corporate entity, included adequately and properly managing and operating its business in conformity with the law, statutes and regulations that govern it; by adequately and properly managing and operating their business to ensure that its employees and individual staff Defendants herein, were properly trained to provide the services and care which CCS and the individual staff Defendants held themselves out as capable of providing.

38. Defendants, CCS and the individual staff Defendants breached their duties to Plaintiff and the decedent Troutman, and failed to confirm their conduct in accordance with the laws, statutes, and regulations, to include, but not necessarily limited to negligently hiring, supervising, training, discipline, and retaining employees who, *inter alia* by (a) failed to care for and ensure the safety of Troutman while at LMDC; (b) failed to properly train, supervise, discipline, retain, hire and/or discharge their employees who were not adequately performing their functions as medical and psychiatric staff; and (c) were otherwise negligent in their care and treatment of Troutman, and said care fell below the standard of care. As a direct and proximate

result Troutman died in a single cell at LMDC.

39. Defendant CCS and its individual Defendant employees were aware of Mr. Troutman's extreme agitation, lack of insight and judgment, and his history of suicide attempt only eleven days preceding his death, and yet they failed to ensure appropriate care, treatment, and supervision and failed to protect him from self-harm.

40. The injuries alleged in this cause of action are the direct result of official policy, custom and practices of Defendant CCS, and CCS and each individual Defendant, jointly and severally, are liable to Plaintiff for the damages caused by Troutman's death to include compensatory and putative damages caused thereby in an amount to be determined by a jury.

### F. Count VI -- Respondent Superior As To CCS

41. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

42. The conduct that Defendant CCS employees engaged in was within the scope of their employment with Defendant CCS, and Defendant CCS is liable for said conduct under the doctrine of respondeat superior, and or through ratification of policies and customs that proximately caused Troutman's death for which Plaintiff is entitled to compensatory and punitive damages an amount to be determined by a jury.

### VII. DAMAGES

43. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs were fully set forth herein.

44. Mr. Troutman's death was preventable, and his estate is entitled to recover for his mental and physical pain and suffering and lost future income as a consequence. In addition, Defendants' violations of Mr. Troutman's constitutional and common law rights were so cruel and

malicious, and evinced such a total and reckless disregard for his life and those rights, that Mr. Troutman's estate is entitled to recover punitive damages from Defendants in order to deter such conduct in the future. Further, the surviving family members are entitled to recover for loss of familial association.

**WHEREFORE**, Plaintiff requests as follows:

a) Judgment be entered on Plaintiff's behalf against all Defendants;

b) That Plaintiff be awarded such general, special and punitive damages as are proved at trial;

c) That Plaintiff be awarded reasonable attorney's fees and costs incurred in prosecuting this action pursuant to 42 U.S.C. Section 1988, KRS 431.082 and other statutes;

d) That Plaintiff be awarded pre-judgment and post-judgment interest in the maximum amount allowed by law;

e) That the Court award such other and further relief as it deems just and equitable under the circumstances; and,

f) Trial by jury.

                                                Respectfully submitted,

                                                /s/ Christina R. L. Norris
                                                CHRISTINA R. L. NORRIS
                                                P.O. Box 386
                                                Prospect, Kentucky 40059
                                                (502) 899-4755
                                                christina@norrislawky.com

                                                    -and-

                                  LARRY SIMON
                                  239 South Fifth Street, Suite 1700
                                  Louisville, Kentucky 40202
                                  (502) 589-4566
                                  larrysimonlawoffice@gmail.com

                                  CO-COUNSEL FOR PLAINTIFF