UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-742-DJH

STEPHANIE TROUTMAN,
Administratrix of the Estate of
CHARLES R. TROUTMAN, Jr.,
Deceased,                                                                                              Plaintiff,

v.

LOUISVILLE METRO DEPARTMENT
OF CORRECTIONS, et al.,                                                                        Defendants.

## Memorandum Opinion and Order

Plaintiff Stephanie Troutman ("Troutman") has filed a motion to compel (DN 81) the production of administrative documents and mortality reviews from defendant Correct Care Solutions ("CCS"). She also seeks to re-depose defendant Kimberly Brown ("Brown"), an employee of CCS. For the reasons stated below, the Court **GRANTS** Troutman's motion to compel.

## I. Statement of Facts

The following facts are adduced from Troutman's second amended complaint. (DN 28.) She alleges that in early November 2015, her father, Charles Troutman Jr. ("Troutman Jr."), was arrested for narcotics offenses and booked into a detention facility operated by defendant Louisville Metro Department of Corrections ("LMDC"). (*Id*. at 197.) While he was being housed in an individual cell with barred windows following a jail fight, Troutman Jr. attempted to suffocate himself by wrapping a piece of gauze around his neck. (*Id*.) A LMDC officer rescued Troutman Jr., the latter stating shortly after his suicide attempt that he "had no reason to

live." (*Id*.) Troutman Jr. was cleared to return to general population three days after his suicide attempt (although he denied having made a suicide attempt). (*Id*. at 197–98.) Seven days after his return to general population, Troutman Jr. was involved in another fight and again sent to an individual cell with barred windows. (*Id*. at 198.) Troutman Jr.'s second suicide attempt was successful; he hanged himself by tying his bedsheets around one of the window's bars. (*Id*.) Troutman contends that defendant James Cox ("Cox"), an employee of LMDC, violated LMDC policies when he authorized the transfer of Troutman Jr. to an individual cell with barred windows without first obtaining approval from the onsite medical staff. (*Id*. at 199.)

## II. Summary of Law

Rule 26(b)(1) defines the scope of and limits on discovery. It provides:

> ***Scope in General***. Unless otherwise limited by court order, the scope of discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Additionally, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). It is axiomatic that the Court has broad discretion in determining the proper scope of discovery. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981); *Naartex Consulting Corp. v. Watt*, 722 F. 2d 779, 788 (D.C. Cir. 1983); *Hibbs v. Marcum*, 2018 WL 953347, at *2 (W.D. Ky. Feb. 20, 2018).

### III. Analysis

Troutman makes three requests with her motion to compel. First, she requests that CCS produce "all internally conducted mortality reviews and/or psychological autopsies" in their possession along with the documents utilized in the generation of them that relate to Troutman Jr. and several other recently-deceased individuals. (DN 81, #434.) Second, she requests that Brown, who is employed by CCS as a nurse, reappear for her deposition after she refused to answer two questions during her first deposition at CCS's counsel's behest. (*Id.*) Finally, she seeks the costs and fees associated with bringing her motion to compel and re-deposing Brown. (*Id.*) The Court will address each of these requests in turn.

### A. Mortality Reviews and Underlying Documents

On June 5, 2017, Troutman served discovery requests on CCS regarding Troutman Jr.'s suicide along with several other suicides that occurred both before and after his death. The two Interrogatories at issue here, Nos. 25 and 27, are as follows:

> **Interrogatory No. 25**: Please produce any and all documents in the possession of CCS that constitute internally conducted mortality reviews and/or psychological autopsies and any reports in which pertinent policies and procedures involving suicide prevention and intervention were evaluated, either by employees of CCS or by consultants hired by CCS, with recommendations to corporate leadership and quality control divisions to correct or amend current policies or to develop new policies, after each of the following inmate suicides at Louisville Metro Corrections.
>
> a. Mahmoud Hindi (2013)

    b. Lavon Moore (2014)
    c. Jonathon Wright (2014)
    d. James Earl Ashby (2015)
    e. Charles Troutman (2015)
    f. Franklin Bolton (2015)
    g. Mark Webb (2015)

**Interrogatory No. 27**: Please produce the following CCS documents regarding all inmate suicide attempts at LMDC (that resulted in death, required medical treatment and/or hospitalization) within 3 years of November 24, 2015:

a. Medical Examiner's Preliminary Report
b. Inmate's In-Custody Medical Record (including but not limited to inmate's patient profile-summary form; initial evaluation form; treatment plans; progress notes; orders; and problem list.
c. Inmate's Medical/Mental Health Observation Forms
d. Inmate's Medical/Mental Health Acute Housing Status Face Sheet
e. Inmates's Medical/Mental Health Housing Unit – Daily Assessment Form
f. Inmate's Staff Referral Form

(DN 81, #435.) According to Troutman, CCS's policy is to conduct a mortality review within thirty days of the death of an inmate for the "sole purpose" of "improving future performance." (DN 90, #593.) The larger in scope "death review" consists of an "administrative review, the clinical mortality review, and a psychological autopsy if death is by suicide." (*Id*.) LMDC also has a separate policy of conducting a review of the situation following a suicide or suicide attempt by an inmate. (*Id*.) Defendant Mark Bolton ("Director Bolton"), the Director of LMDC, testified that CCS conducts the review process and leads the discussion during the mortality review meetings, which CCS and LMDC jointly participate in. (*Id*. at 594–95.)

CCS made near-identical objections to both interrogatories; it objected to Interrogatory 25 with "this Request is vague and ambiguous, overly broad and unduly burdensome and producing this information may constitute a violation of HIPAA" and to Interrogatory 27 with "this Request is vague and ambiguous, overly broad in time, and [the] scope and the production

4

of which would violate HIPAA." (DN 88, #584–85.) In its responses to the interrogatories, CCS does not explain how the interrogatories are vague, ambiguous, overly broad, or unduly burdensome. In its response to Troutman's motion to compel, however, CCS only objects to the production of the documents because they are overbroad in time and protected by both the work-product doctrine and HIPAA. (DN 88, #584.) In support of its work-product doctrine argument, it states that the inmate mortality reviews were "created at the request of counsel and considered attorney work product." (*Id*. at 586.)

As an initial matter, the Court agrees with Troutman[1] that CCS's objections to Interrogatories Nos. 25 and 27 are boilerplate objections. In its response to Troutman's discovery requests, CCS does not provide any factual basis for its objections other than musing that producing the relevant documents "may" be a HIPAA violation (for No. 25). (DN 88, #584–85.) It is once again necessary for the Court to reiterate that boilerplate objections to discovery requests are unacceptable under both the Federal Rules of Civil Procedure and the overwhelming majority of case law not only in this circuit, but across the country. *Steed v. EverHome Mortg. Co*., 308 Fed. App'x. 364, 371 (11th Cir. 2009) (noting that boilerplate objections to discovery requests "may border on a frivolous response"); *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that boilerplate objections to discovery requests are insufficient to assert a privilege); *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper."); *Siser North America, Inc. v. Herika G. Inc.*, 2018 WL 2108400, at *8 (E.D. Mich. Mar. 23, 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."); Fed.

---

[1] (DN 90, #596.)

R. Civ. P. 33(b)(4) (requiring objections to interrogatories be made with specificity); Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production "state with specificity" the grounds for objecting to the request); *Id*. at (b)(2)(C) ("an objection must state whether any responsive materials are being withheld on the basis of that objection"). The consequences of utilizing boilerplate objections to respond to discovery requests usually results in the waiver of those specific objections. *Wesley Corp. v. Zoom T.V. Products, LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018).

But even if CCS had made proper objections to Troutman's discovery requests, its justifications for not producing the documents do not pass muster. First, Troutman's discovery requests are not overbroad. She has requested reports and documents related to both her father's suicide and several other suicides that occurred within a two year period of his death. (DN 81, #435.) The requested documents from 2013 and 2014 are relevant because Troutman may be able to better support her factual allegations if the requested documents reveal that CCS did not follow proper procedures with past inmate suicides. She has not, for instance, requested documents from *every* suicide that has ever occurred under CCS's watch, but only those from seven individuals, including Troutman Jr, within a relevant time period. Troutman's discovery request is thus appropriately narrow.

Turning to CCS's objections on the basis of the work product doctrine, the Court notes that CCS only raised this objection for the first time in its response to Troutman's motion to compel. As is the result with boilerplate objections, the failure to raise a pertinent objection to a discovery request within the allotted response period results in the waiver of that objection. *Carfagno v. Jackson,* 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001) (citing *Richmark*

6

*Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)). Procedural issues aside, there are several problems with CCS invoking the work product doctrine to protect the mortality reviews from disclosure. The work product doctrine generally protects documents from disclosure that are prepared by or for an attorney in anticipation of litigation. *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006). There are two elements that the party invoking the privilege has the burden of establishing: that the documents at issue were (1) prepared in anticipation of litigation or trial, and (2) that they were prepared by or for another party or its representative. *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (citing Fed. R. Civ. P. 26(b)); *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). To determine whether a document has been prepared "in anticipation of litigation," there are two additional questions: (1) whether the document was prepared because of a party's subjective anticipation of litigation (contrasted with ordinary business purposes) and (2) whether the subjective anticipation was objectively reasonable. *U.S. v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).

After reviewing the relevant evidence, the Court concludes that the mortality reviews, psychological autopsies, and the underlying documents are not protected by the work product doctrine. CCS's own documents indicate that the "sole purpose" for conducting the mortality reviews is for "improving future performance." (DN 90-1, #604.) Improving service performance falls under the category of "ordinary business purpose" that the Sixth Circuit contrasted with litigation preparation in *Roxworthy*, so it is unconvincing for CCS to now claim that the reviews are created in anticipation of litigation. *U.S. v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). Additionally, CCS has failed in its burden to produce evidence showing that the

documents were generated in anticipation of litigation. Indeed, it only makes a conclusory statement that the documents are privileged information without explaining how or why. (DN 88, #586.) This bare statement is insufficient to invoke the protection of the work-product doctrine. *Roxworthy*, 457 F.3d at 597 (citing *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002); *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987)).

CCS's objection based on HIPAA privacy concerns requires more of an explanation. The Health Insurance Portability and Accountability Act ("HIPAA") restricts health care entities from disclosing protected health information. Regulations authorized by HIPAA prohibit communications with health care providers regarding patients' medical condition without their consent or a "qualified protective order." 45 CFR §164.512. HIPAA's privacy provisions allow for disclosure of medical information in the course of administrative or judicial proceedings, but it places certain requirements on both the medical professional providing the information and the party seeking it. 45 C.F.R. §164.512(e). One of the ways in which disclosure of medical information is permitted is "in response to an order of the court…provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. §164.512(e)(1)(i).

As the paragraph above illustrates, information protected by HIPAA can lawfully be disclosed through a court order alone; CCS's statement that it "**must** have the permission of the patient or the patient's authorized representative" before disclosing HIPAA information is incorrect[2]. (DN 88, #585) (emphasis added). There is no requirement that CCS obtain the

---

[2] The Court notes that even if this was the applicable standard, Troutman, acting as the administratrix of her father's estate, gave her written consent for CCS to release Troutman Jr.'s mortality review. (DN 90-4.) Despite having

8

written consent from the families of the other deceased inmates before releasing the information when CCS is subject to a valid court order. Therefore, as the information is highly relevant to Troutman's claims and not protected by any other privilege, the Court will **GRANT** Troutman's motion to compel in regards to Interrogatories 25 and 27.

### B. Deposition of Nurse Brown

Next, Troutman requests that the Court order Brown to "reappear for her deposition" and answer the questions that she certified in her deposition. (DN 81, #434.) Troutman states that during Brown's January 2018 deposition, Brown "refused to answer certain questions and was evasive at best with respect to others." (*Id*. at 439.) Troutman brings two specific instances of this behavior to the Court's attention. First, she states that Brown refused to answer the hypothetical question, "[i]f mental health did not follow up, trained as a nurse, hypothetically, Nurse Brown, what would you do?" (DN 82, #519.) Brown's response was "I can't hypothetical," which was then followed by an objection from CCS's counsel. (*Id*.) Troutman argues that as the person who received Cox's telephone call authorizing Troutman Jr.'s transfer to a single cell with barred windows, Brown was the "sole conduit" of information between LMDC and CCS regarding Troutman Jr.'s transfer. (DN 81, 441.) Therefore, she argues, her answer to the hypothetical question is "central to what [Brown] did or knew that she should have done on the date that [Troutman Jr.] committed suicide." (*Id*.) The second certified question had asked Brown if she was "taking any medication" on the day of the deposition. (DN 82, #525.) Troutman states that the medication question was "prompted by [Brown's] demeanor and

---

written consent, which CCS argues it needs to release the information, it still refused to release Troutman Jr.'s mortality review. 45 C.F.R. §164.508(a)(1).

9

inability to give responsive answers to even the most basic questions, such as what her educational and employment history was." (DN 81, #440.)

In response, CCS argues that Brown had already answered Troutman's hypothetical, but that "[i]t was clear that [Troutman]'s counsel did not like [Brown]'s answer and is attempting to get her to give a different one." (DN 88, #587.) CCS also argues that Brown was incapable of answering the hypothetical question because as a nurse, she needed more specific information as she "take[s] a patient as they come on a case by case basis." (*Id*. at 587–88.) In regards to the second question about any medication Brown was taking, CCS argues that Troutman "is not entitled to the information," and that it is not relevant to the action. (*Id*. at 588.)

"The scope of examination permitted under [Federal Rule of Civil Procedure 26(b)] is broader than that permitted at trial. *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). The test is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Id*. As this Court has observed in the past, the "relevancy" objection "has no place in discovery unless the questioning enters the realm of harassment or embarrassment." *Wright v. Firestone Tire and Rubber Co.*, 93 F.R.D. 491, 493 (W.D. Ky. 1982). Indeed, counsel may instruct a deponent not to answer a question only when necessary to "preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 250 F. Supp.3d 244, 267 (W.D. Ky. 2017); Fed. R. Civ. P. 30(c)(2). When the examining attorney asks an irrelevant question (or at least one that opposing counsel believes to be irrelevant), opposing counsel should enter an objection and allow the deponent to answer. *Id*.

Turning first to the question of Brown's refusal to answer Troutman's hypothetical, the Court finds CCS's arguments unpersuasive. Contrary to its claim that Brown already answered Troutman's question, she did not provide a substantive answer to Troutman's question of what she, as a nurse, would do if mental health did not "follow up." (DN 82, #519.) Brown merely stated that she couldn't answer the hypothetical question, despite having just answered several hypotheticals in a row, such as Troutman's previous question (what she would do if she believed that mental health was not "acting quickly enough"). (*Id.*) There is no prohibition against asking a lay witness a hypothetical question during a deposition, *Miller v. Village of Pinckney*, 2008 WL 4190619, at *1 (E.D. Mich. Sept. 9, 2008) (citing Fed. R. Civ. P. 30), but the hypothetical must be based upon facts of record. *Id.* (citing *Williams v. Thomas Jefferson Univ.*, 54 F.R.D. 615, 617 (E.D. Pa. 1972)). This is the case here; Brown was the one who received the phone call from Cox informing CCS that Troutman Jr. would be placed in a single barred cell. Because Cox never received a return phone call from CCS blocking the transfer, Troutman Jr. was sent back into the individual cell. Troutman alleges that had the medical department properly followed up on the call, they would have discovered that Troutman Jr. was unsuited to be placed in an individual cell. Thus, the question of what Brown would have done if she knew that mental health did not properly follow up with Troutman Jr. is both grounded in the record and highly relevant to Troutman's claims.

Similarly, Troutman's question regarding whether Brown was on any medication during her deposition is not only relevant in part, but counsel for CCS improperly prohibited Brown from answering the question. As the Court noted above, when counsel objects to a line of questioning in a deposition based on relevance, he or she should note the objection but allow the

deponent to answer. *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 250 F. Supp.3d 244, 267 (W.D. Ky. 2017); Fed. R. Civ. P. 30(c)(2). Counsel for CCS should have voiced her objection but instructed Brown to answer the question, but this is not what she did. Even so, the Court believes that inquiring into all of Brown's medications at the time of her deposition would not lead to relevant evidence. Instead, at Brown's next deposition, Troutman will be allowed to inquire into whether Brown is (or was at her first deposition) using any medication or any other substances that could impair or have impaired her ability to recall information and testify accurately. If the parties cannot agree on what medications qualify as potentially impairing Brown's ability to recall information and testify accurately, Troutman will be entitled to ask about all Brown's medications, with any testimony about medications ultimately deemed to fall outside the scope described herein to be kept confidential and, if filed, filed provisionally under seal with an accompanying motion to seal.

### C. Costs and Fees

Finally, Troutman requests that the she be awarded the fees for bringing her motion to compel and the costs associated with deposing Brown for a second time. (DN 81, #441; DN 90, #602.) Federal Rule of Civil Procedure 37 allows for a party to recover the costs associated with filing its motion to compel when the Court ultimately grants the motion, but only if certain elements are not met. Fed R. Civ. P. 37(a)(5)(A). The first element is not in question here because there is sufficient evidence that Troutman attempted to resolve the discovery dispute before filing the motion to compel. In fact, it was at CCS's request that Troutman filed the motion to compel. The second element, on the other hand, is most in dispute. It asks whether the opposing party's (CCS) "nondisclosure, response, or objection was substantially justified."

In this case, the Court finds that CCS's refusal to turn over most of the mortality reports and other underlying documents was substantially justified. Although the Court determined that CCS was ultimately incorrect about the interplay of HIPAA and the mortality reviews, it could not, pursuant to HIPAA, release the information without either a court order or the consent from the subject parties.

The Court will, however, award the costs associated with Brown's second deposition and the costs associated with obtaining Troutman Jr.'s mortality review and the documents underlying it. Counsel for CCS should not have prohibited Brown from answering Troutman's question about whether she (Brown) was using medication, as counsel may not prevent a deponent from answering based solely on a relevancy objection. Similarly, CCS received written permission from Troutman Jr.'s legal representative to disseminate his mortality review, which it should have known was sufficient to satisfy the stringent requirements of HIPAA. 45 C.F.R. §164.508(a)(1). Despite the clear and plain language of HIPAA, CCS refused to turn over Troutman Jr.'s mortality review and the underlying documents related to it. It cannot argue that it was "substantially justified" in withholding that information.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS** Troutman's motion to compel (DN 81).

### V. Order

**No later than 60 days** after entry of this Order, CCS is to supplement its discovery responses in accordance with this Court's opinion. **Within 30 days** of entry of this Order, Troutman may file an attorneys' fees bill pursuant to Fed R. Civ. P. 54(d) and Local Rule 54.4, attaching an invoice detailing the costs of taking Brown's deposition for a second time and the

13

costs of preparing the portions of this motion related to Brown's deposition and Troutman Jr.'s mortality review.  Under Local Rule 7.1, CCS has **21 days** in which to respond; any such response shall address **only** the reasonableness of Troutman's fee bill.  Any broader objection to the ruling herein must be contained in an objection to this Order, pursuant to Local Rule 72.2.  An agreement between the parties on the issue of fees obviates the need for Troutman to file a fee bill.

      **Within 60 days** within entry of this Order, Troutman shall depose Brown for a second time; Troutman may only ask Brown the questions discussed herein (along with any relevant follow up questions).

cc:  Counsel of record