UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| STEPHANIE TROUTMAN, Administratrix of the Estate of CHARLES R. TROUTMAN, Jr., Deceased, | ) ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | |
| LOUISVILLE METRO DEPARTMENT Of CORRECTIONS, et al. | ) ) ) ) | Civil Action No. 3:16-cv-000742-DJH |
| Defendants. | ) | |

**DEFENDANTS, CORRECT CARE SOLUTIONS, LLC AND NURSE KIMBERLY BROWN'S OBJECTION TO DOCKET NUMBER 98 PURSUANT TO LOCAL RULE 72.2 AND MOTION TO RECONSIDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

Come Defendants Correct Care Solutions, LLC ("CCS") and Nurse Brown ("CCS Defendants"), by counsel, and in response to this Court's Memorandum Opinion and Order Granting Plaintiff's Motion to Compel and Awarding Costs, respectfully files this Objection, pursuant to Local Rule 72.2 and requests this Honorable Court reconsider its Order as to re-deposing Kimberly Brown and awarding costs. In support of its Objection and Partial Motion to Reconsider, Defendants state as follows:

**INTRODUCTION**

On February 9, 2018, Plaintiff filed a Motion to Compel against Correct Care Solutions, LLC. [*see* Docket no. 81] In her Motion, Plaintiff claimed that CCS (1) failed to properly

1

produce certain documents requested in the course of discovery and also (2) that Nurse Kimberly Brown be re-deposed as to two certified questions. Plaintiff also requested she be awarded costs for filing her Motion to Compel and for taking Nurse Brown's first and second deposition.

Defendants CCS and Nurse Brown responded that (1) CCS had participated in discovery in good faith and had produced **hundreds** of documents throughout the course of discovery. CCS argued that its objections to Plaintiff's requests for HIPPA protected documents (specifically, morbidity and mortality reports pertaining to the decedent and other, non-party patients) were substantially justified and made in good faith. [*see* CCS Response to Plaintiff's Motion to Compel, Docket no. 88] Additionally, CCS argued that (2) Plaintiff was not entitled to re-depose Nurse Brown because Nurse Brown gave responsive answers to Plaintiff's counsel's questions.

In spite of Defendants' good faith responses to discovery, this Honorable Court ordered Nurse Brown to be re-deposed as to two certified questions and awarded costs related to Charles Troutman's internal mortality and morbidity documents and also as to re-deposing Nurse Brown. [*see* Docket no. 96] However, Defendants CCS and Nurse Brown object to this Honorable Court allowing Nurse Brown to be re-deposed and also object to the harsh sanction of awarding costs. Defendants CCS and Nurse Brown respectfully request this Honorable Court accept its objections to Docket No. 96 and/or reconsider its Order (Docket no. 96) as to the award of costs and to the re-deposition of Nurse Brown.[1]

## LEGAL STANDARD

---

[1] Although Defendants CCS and Nurse Brown disagree with the additional provisions of the Court's Order (namely ordering the production of all internal mortality and morbidity documents related to Charles Troutman and non-party patients mentioned in Plaintiff's Motion to Compel), they do not object to the Court's Order in that regard or seek reconsideration of those issues.

Federal Rule of Civil Procedure 59(e) states that the District court may grant a motion to alter or amend (or reconsider) a judgment under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, 2009 U.S. App. LEXIS 2092, 2009 WL 232998, *3 (6th Cir. Feb. 3, 2009). However, the movant bears a significant burden in proving that such relief is merited.

## ARGUMENT

### I. The Court Created Manifest Injustice by Requiring Nurse Brown to be Re-deposed

According to Rule 59(e), a Court will grant a Motion to Reconsider where there is "a need to prevent a manifest injustice." *Id.*; *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 496 (6th Cir. 2006); *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). In this case, by requiring Nurse Brown to be re-deposed and providing monetary sanctions against CCS and Nurse Brown, the Court. As applied to Rule 59(e), no general definition of manifest injustice has ever been developed; courts instead look at the matter on a case-by-case basis. What is clear from case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy. *McDaniel v. Am. Gen. Fin. Servs., Inc.*, 04-2667 B, 2007 WL 2084277, at *2 (W.D. Tenn. July 17, 2007) (citations omitted) (quoting *In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004).

Requiring Nurse Brown to be re-deposed would create a manifest injustice because (1) she answered Plaintiff's certified questions to the best of her ability during her deposition, and

3

requiring Nurse Brown to testify about any medication she may have been taking at the time of her deposition goes against public policy; and (2) requiring her to answer a hypothetical question (that she already testified she could not answer) would be requiring Nurse Brown to fabricate a response, which goes against public policy and legal ethics.

1. **Nurse Brown already answered Plaintiff's counsel's certified questions to the best of her ability**

During her deposition, Nurse Brown was asked two questions that were ultimately certified by Plaintiff's counsel: (1) "Are you taking medication today?" And (2) "If mental health did not follow-up, hypothetically, trained as a nurse, what would you do?" [see Docket no. 81, pps. 7-8]

With respect to the first question, Plaintiff's Motion to Compel incorrectly stated that Nurse Brown failed to answer "whether Nurse Brown had ingested any medications/substances that would affect her demeanor and ability to accurately recall events." [*see* Docket no. 81, p. 8] However, as pointed out in CCS and Nurse Brown's Response, and also evident in Nurse Brown's deposition, Nurse Brown indeed answered this question. Plaintiff's counsel asked Nurse Brown, "And one question I always ask every deponent, so please don't take offense, is there anything you are either on medication or anything that you believe would impair you from being able to give a complete, accurate history of what occurred on the dates that you interfaced with Mr. Troutman?" (Brown deposition p. 7:7-14). Nurse Brown responded, "no." (*Id*).

In the Court's Memorandum Opinion and Order, the Court noted that, "Troutman's question regarding whether Brown was on any medication during her deposition is not only relevant in part, but counsel for CCS improperly prohibited Brown from answering the question." [Docket no. 96, p. 11] However, this is not factually true. As indicate, supra, counsel for Nurse Brown permitted Brown to answer Plaintiff counsel's question as to whether she was

4

taking any medication or other substance that may impact her ability to testify. In fact, the Court's order allows Plaintiff to "inquire into whether Brown is (or was at her first deposition) using any medication or any other substances that could impair or have impaired her ability to recall information and testify accurately." (Id. at p. 12]. As indicated above, this information was previously asked and answered by Nurse Brown.

Requiring Nurse Brown to re-appear to re-ask this question would present a manifest injustice. It would be unduly burdensome to Nurse Brown and counsel, it creates a hardship to Nurse Brown who is employed as a floor nurse and it creates unnecessary costs. According to the medical records, Nurse Brown had absolutely no interaction with the decedent. Despite this, Plaintiff named her as a defendant in this lawsuit and took her deposition over the course of three hours. Nurse Brown was previously asked whether she was taking any medication or substance that would impact her ability to testify and she responded "no." There is nothing to be gleaned from allowing Plaintiff's to inquire again about such medication and, in fact, could be construed as harassment.

**2. Requiring Nurse Brown to answer the hypothetical question posed would require her to fabricate a response, which goes against public policy**

Additionally, this Honorable Court ordered Nurse Brown to be re-deposed as to a hypothetical question posed by Plaintiff's counsel. Specifically, Plaintiff's counsel asked Nurse Brown, "And if mental health did not follow up, trained as a nurse, hypothetically, Nurse Brown, what would you do?" (Brown deposition pps.40-41) Nurse Brown responded, "I can't hypothetical." (*Id.*) Nurse Brown explained that she was not a mental health nurse and could not answer the question as posed. (*Id.*)

5

Despite this, Plaintiff's counsel certified the question and filed a Motion to Compel. This Honorable Court subsequently entered its Order requiring Nurse Brown to be re-deposed to answer the question. The Court stated,

> Contrary to its claim that Brown already answered Troutman's question, she did not provide a substantive answer to Troutman's question of what she, as a nurse, would do if mental health did not "follow up." (DN 82, #519.) Brown merely stated that she couldn't answer the hypothetical question, despite having just answered several hypotheticals in a row, such as Troutman's previous question (what she would do if she believed that mental health was not "acting quickly enough"). (*Id*.) There is no prohibition against asking a lay witness a hypothetical question during a deposition, *Miller v. Village of Pinckney*, 2008 WL 4190619, at *1 (E.D. Mich. Sept. 9, 2008) (citing Fed. R. Civ. P. 30), but the hypothetical must be based upon facts of record. *Id*. (citing *Williams v. Thomas Jefferson Univ*., 54 F.R.D. 615, 617 (E.D. Pa. 1972)). This is the case here; Brown was the one who received the phone call from Cox informing CCS that Troutman Jr. would be placed in a single barred cell. Because Cox never received a return phone call from CCS blocking the transfer, Troutman Jr. was sent back into the individual cell.

[Docket no. 96, p. 11]

The Defendants do not disagree that "there is no prohibition against asking a lay witness a hypothetical question." In fact, the Court accurately points out in its Order that Nurse Brown did, in fact, answer previous hypothetical questions. However, in this situation, the hypothetical question was asked, and answered by Nurse Brown. Nurse Brown testified that she was unable to answer the question as posed. The Court went on to state that "the hypothetical question must be based on facts of record." However, in this case, Nurse Brown testified that she had no memory of ever taking the phone call at issue. Thus, there are no facts of record to assist Nurse Brown in answering the hypothetical question. Simply because Plaintiff's counsel believes this is a "central issue to their case" does not make this a question that Nurse Brown should be compelled to answer differently than she already did. To compel a different response would be

6

to compel Nurse Brown to fabricate information based on circumstances unknown to her, which goes against the case law cited in this Court's Order and creates a manifest injustice.

## II. The Court Erred by Awarding Monetary Sanctions

In this case, the Court erred by awarding monetary sanctions because of the reasons stated, *supra*, and because Defendants objections to Plaintiff's document production was substantially justified. To provide sanctions for objections that were substantially justified is an error of law. "A motion [or objection] is 'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 765 (6th Cir. 2005), quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In this case, there was a genuine dispute about the production of Mr. Troutman's internal mortality review.

Specifically, Plaintiff requested production of "any and all documents in the possession of CCS that constitute internally conducted mortality reviews and/or psychological autopsies and any reports in which pertinent policies and procedures involving suicide prevention and intervention were evaluated, either by employees of CCS or by consultants hired by CCS, with recommendations to corporate leadership and quality control divisions to correct or amend current policies or to develop new policies, after each of the following inmate suicides at Louisville Metro Corrections.

      a.      Mahmoud Hindi (2013)

      b.      Lavon Moore (2014)

      c.      Jonathon Wright (2014)

      d.      James Earl Ashby (2015)

      e.      Charles Troutman (2015)

f. Franklin Bolton (2015)

g. Mark Webb (2015)"

CCS responded: "Objection; this Request is vague and ambiguous, overly broad and unduly burdensome and producing this information may constitute a violation of HIPAA." Among other things, the request sought information that CCS reasonably believed was protected by HIPAA. Furthermore, CCS learned that the mortality review reports were conducted at the request of counsel in anticipation of litigation. Thus, production of the mortality review reports could be considered protected as attorney work product.

Although the Court agreed that, "[i]n this case, the Court finds that CCS's refusal to turn over most of the mortality reports and other underlying documents was substantially justified," the Court nevertheless permitted monetary sanctions related to the production of Troutman's internal mortality." [Docket no. 96, p. 13] The Court reasoned that CCS was not substantially justified in withholding Troutman's internal mortality review because it was clear any HIPAA concerns were alleviated. [*Id*.] However, this reasoning fails to take into account CCS's legitimate HIPPA concerns and other objections related to the document production. First, this Court declined to enter a protective order in this case. [*see* Docket no. 26] Thus, CCS did not have any assurances regarding Troutman's internal mortality report, or the mortality report of any other patient, despite an "authorization" from the Plaintiff. Second, case law is unclear as to who can waive a HIPPA privacy concern. Third, as CCS pointed out in its Response to Plaintiff's Motion to Compel, Troutman's internal mortality review was attorney work product. The Court's Order takes issue with this position, but, it is a position that has substantial justification for non-disclosure and certainly does not merit the harsh penalty of monetary sanctions as neither the deposition testimony or mortality review was conducted or withheld in bad faith.

## CONCLUSION

For the foregoing reasons, Defendants CCS and Nurse Brown respectfully request this Honorable Court accept their objections to Docket no. 96 and decline to compel the re-production of Nurse Brown and the award of monetary sanctions and/or Reconsider its Order pursuant to Rule 56(e).

Respectfully submitted,

/s/Megan P. O'Reilly
Megan P. O'Reilly
Blackburn Domene & Burchett PLLC
614 West Main Street, Suite 3000
Louisville, KY 40202
(502) 584-1600 - Telephone
(502) 584-9971 – Facsimile
moreilly@bdblawky.com
*Counsel for CCS Defendants*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on July 2, 2018, a true and complete copy of *CCS and Nurse Brown's Objections to DN 96 and/or Motion to Reconsider* was served upon the Court via the United States District Court for the Western District of Kentucky's CM/ECF system which will automatically send copies to the counsel of record.

.

Respectfully submitted,


By: /s/ Megan P. O'Reilly