# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| **STEPHANIE TROUTMAN,** **Administratrix of the Estate of** **CHARLES R. TROUTMAN, JR.,** **deceased,** c/o Gerhardstein & Branch 411 Vine Street Suite 3400 Cincinnati, OH  45202 | CASE NO.  3:16-cv-000742-DJH JUDGE:  DAVID J. HALE MAGISTRATE: COLIN H. LINDSAY |
| **Plaintiff,** v. | |
| **LOUISVILLE METRO** **GOVERNMENT** c/o Mayor Greg Fischer 527 W. Jefferson Street, 4th Floor Louisville, KY 40202 | **THIRD AMENDED** **COMPLAINT AND JURY DEMAND** |
| And, | |
| **MARK E. BOLTON** **JAMES COX** **Individually and in their official** **capacity as employees of Metro** **Government,** 527 W. Jefferson Street, 4th Floor Louisville, KY 40202 | |
| And, | |
| **CORRECT CARE SOLUTIONS;** **KIMBERLY BROWN** **DR. DONNA SMITH** **Individually and in their official** **capacity as employees and/or agents of** **Correct Care Solutions** | |

|  |  |
|---|---|
| c/o: | : |
| **Corporate Agent of CORRECT** | : |
| **CARE SOLUTIONS,** | : |
| **Corporate Creations Network, Inc.** | : |
| **205 Powell Place** | : |
| **Brentwood, TN 37027,** | : |
|  | : |
| **Defendants.** |  |

## I. INTRODUCTION

1.     This civil rights action challenges the failure of Defendants to provide adequate medical care to Charles R. Troutman, Jr. who committed suicide at the Louisville Metro Department of Corrections Hall of Justice (Jail) on November 24, 2015.  Mr. Troutman had a serious medical need, a traumatic brain injury (TBI), which impacted his mental stability, judgment and emotional health.  He attempted suicide soon after intake on November 13, 2015.  Due to his TBI he acted out in the jail and was placed in a single barred cell while he was agitated and distressed.  Five previous successful suicides had occurred in similar cells at the jail in the previous 25 months.  Mr. Troutman's successful suicide within hours of his placement in the single barred cell was both foreseeable and preventable.  Mr. Troutman's daughter brings this civil rights and wrongful death action to secure fair compensation and to encourage these and similar Defendants to provide adequate medical care and better protect the safety and security of the inmates in their custody.

## II. JURISDICTION

2.     Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).  Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.  Venue is proper in this Division.

## III. PARTIES

3.      Stephanie Troutman is the daughter of Charles Troutman, Jr. who is deceased. Ms. Troutman brings this suit as the duly appointed Administratrix of the Estate of Charles Troutman, Jr. for the benefit of his next of kin and heirs. Plaintiff is, at all times relevant hereto, a citizen of the Commonwealth of Kentucky.

4.      Defendant Louisville Metro Government is a unit of local government organized under the laws of the state of Kentucky. Defendant Louisville Metro Government is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

5.      Defendant Mark Bolton is and was at all times relevant to this action the Director of the Louisville Metro Department of Corrections (LMDC). Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and in his official capacity. At all times relevant to this case he has been a Metro policy maker with respect to customs, practices, policies and procedures at the Louisville Metro Department of Corrections.

6.      Defendant James Cox is and was at all times relevant to this action an employee of Louisville Metro Government assigned to the Louisville Metro Department of Corrections. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and in his official capacity.

7.      Defendant Correct Care Solutions (CCS) is a Kansas corporation doing business in Kentucky. At all times relevant to this case CCS provided medical care to inmates at the Louisville Department of Corrections under a contract with Louisville Metro Government. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

8. Defendant Nurse Kimberly Brown is a person who at all times relevant to this action served as an employee of CCS assigned to the Louisville Metro Department of Corrections. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

9. Defendant Dr. Donna Smith is a person who at all times relevant to this action served as an employee and/or agent of CCS assigned to the Louisville Metro Department of Corrections. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

## IV. FACTS APPLICABLE TO ALL CLAIMS

### A. History of Suicides in Single Barred Cells in the LMDC Hall of Justice

10. At all times relevant to this case suicide was the leading cause of death in local jails. https://www.themarshallproject.org/documents/2191181-mortality-in-local-jails-and-state-prisons This fact was well known to the Defendants in this case.

11. From October 2013 to October 2015, there were five in-custody hanging deaths in single barred cells in the LMDC Hall of Justice (HOJ). A sixth inmate committed suicide in the Community Corrections Center during that period.

12. One Inmate committed suicide in the HOJ on October 19, 2013.

13. Another inmate committed suicide in the HOJ on January 3, 2014. This inmate was not cleared by medical prior to placement in the single barred cell where he committed suicide.

14. Ten days after the in-custody hanging in January 2014, an email was distributed reminding staff that all inmates were to be cleared by medical before placement in a single barred cell.

15. Another inmate hanged himself in a single barred cell in the HOJ on October 27, 2014.

4

16.     In February 2015 an inmate with a reported mental health history was placed in a single barred cell in the HOJ without prior clearance by medical. He subsequently hanged himself with a bedsheet.

17.     A fifth inmate hanged himself in a single barred cell the HOJ on October 4, 2015, only one month before Charles Troutman.

18.     Prior to the suicide of Charles Troutman in a single barred cell in the HOJ all of the Defendants were on notice of the practice or procedure of requiring medical clearance before placement in a single barred cell. They were also on notice that the practice or procedure of securing medical clearance was not always followed and even when it was followed, it was often not effective at preventing suicides in the single barred cells in the HOJ. Defendants were also on notice of simple modifications such as installing plexiglass panels to block access to the bars that were available but not utilized to reduce the risk of suicide.

### B. Charles Troutman Enters LMDC with Serious Medical Need

19.     Charles Troutman was a Louisville native who worked as a handyman. He had two adult children including plaintiff. He was very close to his grandchildren and often cared for them and provided financial support to his daughter, plaintiff Stephanie Troutman.

20.     On December 21, 2014, Charles was the victim of an attack by a neighbor who brutally beat him on the head with a baseball bat. Charles was in a coma for an extended period and suffered a traumatic brain injury (TBI) as a result of the attack.

21.     The TBI caused Charles to be impulsive, behave erratically and he was often emotionally unstable. After he suffered from TBI his drug abuse increased.

22.     Charles struggled with drug addiction and used a number of drugs including heroin.

23. Charles was arrested for drug related offenses on November 12, 2015. He was booked at the LMDC shortly after midnight on November 13, 2015. The TBI and drug use was noted on his medical screening form.

24. No release was requested of Charles to secure any record of his prior medical treatment including his TBI treatment records.

25. TBI is a serious medical need. Persons suffering from TBI are often emotionally unstable, lack insight, prone to erratic behavior and violence and often at greater risk of self-harm, including suicide.

### C. First Suicide Attempt on November 13, 2016 Followed by No Treatment

26. Charles was placed in a holding cell by himself while in booking.

27. Alone in that cell Charles attempted suicide by strangling himself with medical gauze.

28. A corrections officer discovered him on the floor shaking and spitting and proceeded to remove the gauze. Mr. Troutman explicitly expressed his desire to commit suicide, stating that he was "a junkie and had no reason to live because [he] was going to get 20 years for his charges."

29. Charles was then placed in an observation cell, "[b]ecause of this inmate's mental health."

30. He was evaluated for thirty minutes by Defendant Dr. Donna Smith on November 17, 2015. She noted the history of TBI, drug abuse and prior self-harm but released him to general population without follow up. He was not placed on the mental health caseload or scheduled for any mental health treatment.

31. Dr. Smith did not have Charles sign a release of information or take any steps to secure his treatment records regarding his prior medical treatment or his TBI.

32.     Suicide is a known risk of TBI, especially among patients who also have substance abuse histories.

### D. Troutman Moved to Single Barred Cell on November 24, 2015 and Commits Suicide

33.     Prior to November 24, 2015 plaintiff called LMDC and reported her concerns about her father's very fragile and depressed state. She also reminded the staff that he suffered from TBI, had been hospitalized and had previously attempted suicide.

34.     On November 18, 2015, Charles Troutman was involved in a verbal altercation with another inmate.

35.     On November 21, 2015, he was issued a disciplinary infraction for a physical altercation with an inmate.

36.     In November 2015, inmates awaiting disciplinary hearings were often locked in isolation in one of the singe barred cells in the Hall of Justice.

37.     Defendant James Cox was one of the LMDC employees responsible for assigning inmates to cells in the HOJ in November 2015.

38.     Due in part to the known risk of suicide by inmates under the stress of awaiting disciplinary charges at LMDC, Defendant Cox knew that inmates including Charles Troutman were required to be cleared by medical staff before placement in the single barred disciplinary cells in the HOJ.

39.     Defendant James Cox called medical that day to initiate the medical clearance for single barred cell placement of Charles Troutman in the HOJ.

40.     Without receiving any clearance from medical Defendant Cox nonetheless authorized the move of Troutman to a single barred cell (Dorm 9; cell #2) in the HOJ.

41. Defendant Cox knew that Troutman was at risk of suicide based on his recent suicide attempt, history of TBI, history of drug abuse, pending disciplinary charges and pending criminal charges.

42. In violation of established practice or procedure, it was common for inmates at risk of suicide to be isolated in single barred disciplinary cells without accomplishing the medical clearance. It was also well known that the medical clearance was not effective at preventing suicides in the single barred cells in the HOJ.

43. Defendant Brown received the request for clearance of Mr. Troutman for a single barred cell, knew that an assessment was needed in light of his serious medical need and yet failed to adequately notify the appropriate staff to secure the medical clearance.

44. The HOJ cell in which Mr. Troutman was placed, Dorm 9; cell #2, provided him with easy access to the means to commit suicide.

45. Upon placement in the single barred seclusion cell Mr. Troutman learned that his bail had not yet been posted and he became visibly upset, punching and kicking the cell doors.

46. Mr. Troutman then tore a sheet into pieces, tied the pieces together, and hanged himself with the sheet from the bars.

47. Defendants Cox, Brown and Smith acted negligently, recklessly, knowingly, unreasonably, and with deliberate indifference to the serious medical needs of Charles Troutman.

48. The outrageousness of the placement of Mr. Troutman in the single barred cell was underscored by the investigating officer from the Public Integrity Unit of Louisville Metro Police who concluded as follows:

> What is unclear and disturbing is why Mr. Troutman was housed within a single cell room with exposed bars and afforded the means in order to do so within such a close proximity of an unsuccessful suicide attempt, a mere 11 days prior. Furthermore, these

single cells with exposed bars have been the site of multiple in custody deaths via ligature hanging in the past yet the exposed bars remain.

### E. Policies, Practices and Culpable Conduct

49. Defendants Metro, Bolton, CCS, and Cox knew that five previous inmates had died by hanging in the previous 25 months after placement in isolation in the single barred cells in the LMDC HOJ before Mr. Troutman hanged himself on the bars in Dorm 9, cell #2.

50. Defendants Metro, Bolton, CCS and Cox knew that suicide is a known risk to inmates placed in isolation and that this risk increases for inmates with serious medical needs such as TBI, histories of recent suicide attempts, histories of drug abuse, and histories of drug withdrawal. Defendants also knew that additional charges of rule violations or crimes put an inmate at greater risk of suicide. Defendants also knew that suicide is a known substantial risk of isolating addicts.

51. Defendants Metro, Bolton, CCS and Cox had a policy, practice or custom of placing inmates with serious medical needs that made them at risk of suicide into the single barred cells within the HOJ without providing those inmates with adequate treatment to prevent suicide.

52. Defendants Metro, Bolton, CCS and Cox had a policy, practice or custom of placing inmates with serious medical needs that made them at risk of suicide into the single barred cells at the HOJ without removing the means to easily commit suicide and without providing adequate monitoring to detect and intervene before suicide was accomplished. Moreover, while modifications to the single barred cells were readily available, such as using plexiglass to block access to the bars, the Defendants failed to implement the modifications and intentionally permitted the cells to present inmates with ready access to the means for suicide.

53.     Defendants Metro, Bolton, Smith and CCS had a policy, practice or custom of failing to secure medical records of inmates with serious medical needs in order to provide them with continuity of care and adequately treat their needs including any suicide risk factors.

54.     Defendants Metro, Bolton, CCS and Cox had a policy, practice or custom of failing to assess for suicidal inmates with serious medical needs that made them at risk of suicide before placing such inmates into single barred cells at the HOJ.

55.     Defendants Metro, Bolton, CCS and Cox had a policy, practice or custom of placing inmates with serious medical needs that made them at risk of suicide into the single barred cells at LMDC while requests for assessment of suicide risk were pending, unnecessarily exposing inmates to the risk of suicide

56.     Defendants Metro, Bolton, CCS and Smith had a policy, practice or custom of providing unreasonable and deliberately indifferent medical care to inmates with TBI, including those with risk factors for suicide such as Mr. Troutman.

57.     Defendants Metro, Bolton, CCS and Smith had a policy, practice or custom of failing to employ quality assurance to identify and solve deficiencies in medical and mental health treatment within the LMDC. This lack of quality assurance included the failure to address deficiencies in practice of securing effective medical clearance before inmates are placed in single barred cells in the HOJ and failing to correct physical conditions including access to the bars that were known to increase the risk of suicide.

58.     On November 24, 2015, Defendants acted pursuant to the policy, practice or custom of not performing adequate and comprehensive cell checks on inmates isolated in single barred cells.

59.     The custom, practices, and policies of Defendants described above were the moving force behind the constitutional deprivations and other deprivations suffered by Mr. Troutman at the LMDC from November 13, 2015 through his death on November 24, 2015. These deprivations included Defendants' denial of adequate medical and mental health care and observation of Mr. Troutman in his isolation cell, ignoring his serious medical need and directly and proximately causing his suicide.

60.     At all times relevant to this case, Defendants Metro, Bolton, and CSS had knowledge of the common practice of failing to properly clear inmates with serious medical needs including the risk of suicide before isolating them in single barred cells in the HOJ. These Defendants failed to adequately train and supervise the jail staff to provide such medical clearance as part of the provision of medical care at the LMDC. That failure to train and supervise staff was deliberately indifferent to inmates such as Mr. Troutman and was the moving force behind his injuries and death.

61.     Despite the Defendants' similar misconduct in five previous suicides between 2013 and 2015, Defendants Metro, Bolton and CCS failed to ensure that the LMDC practice and custom on medical clearance and observations of inmates isolated in single barred cells in the HOJ was followed and that deficiencies in the practice or custom and deficiencies in the physical conditions of the cells themselves were identified and corrected.

62.     Defendants' conduct with respect to Mr. Troutman violated Kentucky state jail regulations and other professional jail standards.

63.     The conduct of Defendants described above was unreasonable and shocks the conscience and violates the evolving standards of decency expected in a civilized society.

### F. Harm to Charles Troutman and his Family

64. As a further direct and proximate result of defendants' actions Mr. Troutman suffered mental anguish, emotional distress, pain and suffering for the days he did not receive adequate care and for the moments of extreme pain and suffering prior to his death.

65. As a further direct and proximate result of Charles Troutman's wrongful death, his survivors and/or heirs have incurred funeral expenses and suffered permanent damages, including but not limited to the loss of his financial and other support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as the loss of prospective inheritance.

66. All the injuries and damages described above were caused proximately by the wrongful acts of the Defendants.

## V. FIRST CAUSE OF ACTION – 42 U.S.C. §1983

67. The Defendants have, under color of state law, deprived Charles Troutman of rights, privileges and immunities secured by the Fourteenth Amendment to the U.S. Constitution including but not limited to the right to due process, the right to be protected, the right to be medical and mental health care for serious medical needs, and the right to be free from deprivations of liberty and needed care that are unreasonable and shock the conscience.

68. Defendants Metro, Bolton and CSS, failed to adequately train and supervise the corrections officers and staff in adequately caring for and observing inmates, especially inmates housed in isolation in the HOJ.

69. The rules, regulations, customs, policies and procedures of the Defendants regarding the medical and mental health treatment of inmates at risk of suicide due to serious medical needs including those housed in isolation in the Hall of Justice were inadequate, unreasonable and

deliberately indifferent and were the moving force behind the constitutional deprivations suffered by Charles Troutman.

70. Defendants Metro, Bolton and CCS were on notice of the obvious need to train and supervise the jail staff in the area of policies and procedures relating to treatment for and monitoring of those inmate at risk of suicide due to serious medical needs but failed to adequately train and supervise the individual jail staff and in so doing were deliberately indifferent to inmates such as Charles Troutman.

## VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

71. The Defendants' actions caused personal injury to and the wrongful death of Charles Troutman resulting in damages recoverable under KRS 411.130(1), (2) and 411.133.

## VII. THIRD CAUSE OF ACTION – NEGLIGENCE BY MEDICAL STAFF

72. After Charles Troutman was admitted to the care and custody of the LMDC, Defendant Nurse Brown and Dr. Smith breached their duty to provide medical care to Mr. Troutman consistent with standard medical practice, all in violation of Kentucky law.

73. The conduct of the Defendant nurse and doctor proximately caused Charles Troutman's injury, pain and suffering, emotional trauma, and death.

## VIII. FOURTH CAUSE OF ACTION – NEGLIGENCE BY CCS

74. Defendant Correct Care Solutions (CCS) and its employees and agents owed a duty of reasonable care to Charles Troutman.

75. Defendant CCS had a duty to provide qualified personnel who were adequately trained and supervised to perform medical services at LMDC including mental health services and a duty to use reasonable care in determining the qualifications and adequate performance of its

contractors, agents and employees who provide medical services. Defendant CCS breached this duty.

76. Defendant CCS had a duty to establish appropriate policies and procedures concerning the medical treatment of inmates at LMDC. Defendant CCS breached this duty.

77. Defendant CCS, its contractors, employees and agents breached their duty of care to Charles Troutman by failing to provide appropriate medical and mental health care and treatment under the circumstances. They acted negligently, recklessly, intentionally, with deliberate indifference and knowingly in violating the standard of care.

78. As a direct and proximate result of the negligence of CCS, Charles Troutman suffered injury, pain and suffering, emotional trauma, and death.

79. In all respects CCS, its contractors, employees and agents acted negligently, recklessly, intentionally, with deliberate indifference and knowingly in violating the standard of care.

## IX. FIFTH CAUSE OF ACTION - NEGLIGENCE BY JAIL STAFF

80. Defendants Bolton and Cox breached their duty to provide medical care and to protect Mr. Troutman from injury consistent with standard correctional practice, all in violation of Kentucky law. They acted negligently, recklessly, intentionally, with deliberate indifference and knowingly in violating the standard of care.

## X. JURY DEMAND

81. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B.   Award Plaintiff punitive damages in an amount to be shown at trial (no punitive damages are requested against Metro Government);

C.   Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.   Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Alphonse A. Gerhardstein (0032053)
Trial Attorney for Plaintiff
Gerhardstein and Branch, Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
Tel (513) 621-9100
Fax (513) 345-5543
agerhardstein@gbfirm.com

/s/ LARRY D. SIMON
LARRY D. SIMON
239 South Fifth Street, Suite 1700
Louisville, Kentucky 40202
(502) 589-4566
larrysimonlawoffice@gmail.com